**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| MARKING OBJECT VIRTUALIZATION INTELLIGENCE, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>KONINKLIJKE PHILIPS ELECTRONICS N.V. AND PHILIPS ELECTRONICS NORTH AMERICA CORPORATION<br><br>*Defendants.* | Civil Action No._____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Marking Object Virtualization Intelligence, LLC ("MOV Intelligence" or "Plaintiff"), by and through its attorneys, brings this action and makes the following allegations of patent infringement relating to U.S. Patent Nos.: 7,200,230 ("the '230 patent"); 6,802,006 ("the '006 patent"); and 7,650,418 ("the '418 patent") (collectively, the "patents-in-suit" or the "MOV Intelligence Patents").  Defendants Koninklijke Philips Electronics N.V. and Philips Electronics North America Corporation (collectively, "Philips" or "Defendant") infringe each of the patents-in-suit in violation of the patent laws of the United States of America, 35 U.S.C. § 1 *et seq.*

## INTRODUCTION

1.     MOV Intelligence and its wholly-owned subsidiary, MOV Global Licensing LLC ("MOV Global Licensing") pursues the reasonable royalties owed for Philips's unauthorized use of patented groundbreaking technology both here in the United States and throughout Europe. MOV Intelligence and its subsidiaries were assigned the rights to these patented technologies by Rovi Corporation ("Rovi").[1]

---

[1] On April 29, 2016, Rovi Corporation acquired TiVo, Inc. The combined company operates under the name TiVo, Inc.

2.      Rovi Corporation was a pioneer and leader in protecting computer technology, including digital rights management ("DRM") and digital watermarking systems.  Rovi assigned MOV Intelligence rights to over 233 patents including many of John O. Ryan's, the founder of Rovi predecessor Macrovision, groundbreaking patents.[2]

## THE PARTIES
## MARKING OBJECT VIRTUALIZATION INTELLIGENCE, LLC

3.      Marking Object Virtualization Intelligence, LLC ("MOV Intelligence") is a Texas limited liability company with its principal place of business located at 903 East 18th Street, Suite 217, Plano, Texas 75074.  MOV Intelligence is committed to advancing the current state of DRM and watermarking technologies.

4.      MOV Intelligence Global Licensing, LLC ("MOV Global Licensing") is a wholly-owned subsidiary of MOV Intelligence and assists in the licensing of MOV Intelligence's patents in territories outside the United States with a focus on the European Union (and the United Kingdom).[3]  MOV Intelligence Global Licensing, LLC is a corporation organized under the laws of Delaware.

5.      Rovi assigned the following patents to MOV Intelligence: U.S. Patent Nos. 7,299,209; 6,510,516; 6,802,006; 7,650,504; 6,813,640; 7,650,418; 7,200,230; 7,124,114; 6,381,367; 6,374,036; 6,360,000; 6,553,127; 6,701,062; 6,594,441; 7,764,790; 8,014,524; 6,931,536; and International Patent Nos. DE60047794; DE60148635.8; DE60211372.5; DE69901231.7-08; DK1047992; EP1047992; EP1303802; EP1332618; EP1444561; ES1047992; FR1047992; FR1303802; FR1332618; FR1444561; GB1047992; GB1303802; GB1332618; GB1444561; GR3040059; IE1047992; IE1444561; IT1047992; NL1047992; NL1444561; PT1047992; and SE1047992.

---

[2] *See* U.S. Patent Nos. 6,381,367; 7,764,790; 6,701,062; 8,014,524; German Patent Nos. DE60001837 and DE60001837D1; Chinese Patent No. CN1186941C; Canadian Patent No. CA2379992C; European Patent No. EP1198959B1; and Japanese Patent No. JP4387627B2.

[3] Wolfram Schrag, *EU-Patent steht auf der Kippe*, BR.COM NACHRICHTEN (August 2016).

6.      MOV Intelligence has the right to sublicense the following international patent assets: AT1020077; AT1198959; AT1080584; ATE232346; AT1020077; AU729762; AU741281; AU753421; AU743639; AU714103; AU729762; AU2002351508; AU765747; AU2000263715; BE1020077; BE1198959; BE1020077; BE1080584; BE900498; BRPI 9812908-2; BR9709332.7; BRPI 9812908-2; CA2305254; CA2332546; CA2379992; CA2305254; CA2332548; CA2557859; CA2252726; CA2462679; CA2315212; CA2416304; CA2425115; CH1020077; CH1080584; CH900498; CH1020077; CH1047992; CNZL98809610.2; CNZL99806376.2; CNZL00811179.0; CNZL98809610.2; CNZL99806377.0; CNZL97194746.5; CNZL02820738.6; CNZL99802008.7; CNZL00819775.X; CNZL200510089437; DE69807102.608; DE60001837.7; DE69908352.4-08; DE69718907.4-08; DE69807102.608; DK1020077; DK1080584; DK1198959; DK1020077; DK900498; EP1020077; EP1198959; EP1080584; EP900498; EP1020077; ES1020077; ES1198959; ES1080584; ESES2191844; ES1020077; FI1020077; FI1080584; FI1020077; FI900498; FR1020077; FR1198959; FR1080584; FR900498; FR1020077; GB1020077; GB1198959; GB1080584; GB900498; GB1020077; GR3041381; GR3045620; GR3043304; GR3041381; HK1028696; HKHK1035625; HK1028696; HK1035282; HK1018562; HKHK1069234; HKHK1057115; HK1083653B; IE1020077; IE1198959; IE1020077; IE1080584; IE900498; IL135498; IL139543; IL148002; IL135498; IL139544; IN201442; IN220504; IN201442; IN207829; IT1020077; IT1080584; IT900498; IT1020077; JP4139560; JP4263706; JP4387627; JP4551617; JP4139560; JP4263706; JP3542557; JP4627809; JP4698925; JP4366037; JP4307069; KR374920; KR422997; KR761230; KR374920; KR362801; KR478072; KR689648; KR539987; KR752067; KR728517; KR593239; MX223464; MX231725; MX226464; MX223464; MX212991; MX214637; MX237690; MX240845; MYMY-123159-A; MYMY-123159-A; NL1020077; NL1198959; NL1080584; NL900498; NL1020077; NZ503280; NZ507789; NZ503280; NZ532122; PT1010077; PT1198959; PT1080584; PT900498; PT1010077; RU2195084; RU2216121; RU2251821; RU2195084; RU2208301; RU2258252; SE1020077; SE1198959; SE1080584; SE900498;

SE1020077; SG71485; SG76965; SG86547; SG76964; SG71485; TWNI117461; TWNI-124303; TWNI-130428; TWNI1600674; TWNI-162661; TWNI-202640; TWNI117461; TWNI-130754; and TWNI-184111.

**KONINKLIJKE PHILIPS ELECTRONICS AND PHILIPS ELECTRONICS NORTH AMERICA**

7.      On information and belief, defendant Koninklijke Philips Electronics N.V. is a Netherlands company with its principal place of business at Breitner Center, Amstelplein 2, 1096 BC Amsterdam, The Netherlands, and which markets and promotes its products in the United States, including in this District.

8.      Upon information and belief, Philips Electronics North America Corporation is a corporation organized and existing under the laws of the State of Delaware, with a place of business located at 3000 Minuteman Rd., Andover, Massachusetts, 01810.  Defendant can be served with process by serving its registered agent for service of process in the State of Texas, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

9.      Philips has cited patents held by MOV Intelligence in the prosecution of patents that were assigned to Philips.  Specifically, patents assigned to Philips have cited U.S. Patent Nos. 6,553,127; 6,360,000; 7,764,790; 6,701,062; 8,014,524; and 6,931,536.  These patents are all owned by MOV Intelligence.

## JURISDICTION AND VENUE

10.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  Accordingly, this Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

11.      Upon information and belief, this Court has personal jurisdiction over Philips in this action because Philips has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Philips would not offend traditional notions of fair play and substantial justice. Philips, directly and/or through subsidiaries or intermediaries (including distributors, retailers,

and others), has committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the patents-in-suit. In addition, Defendant Philips is registered to do business in the State of Texas.

12. Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(d) and 1400(b). Philips is registered to do business in Texas, and upon information and belief, has transacted business in the Eastern District of Texas and has committed acts of direct and indirect infringement in the Eastern District of Texas.

## MOV INTELLIGENCE'S LANDMARK INVENTIONS

13. The groundbreaking inventions in DRM and digital watermarking taught in the patents-in-suit were pioneered by Rovi. Rovi, established in 1983 under the name Macrovision, was a trailblazing technology company focused on inventing and bringing to market fundamental technologies designed to allow producers and distributors of film and music to widely distribute their products while simultaneously protecting their art from unauthorized copying.[4] Macrovision's copy protection technology became so important to content creators that Congress specifically regulated the manufacture and sale of technology that was incompatible with Macrovision's copy protection technology. *See* 17 U.S.C. § 1201(k)(1) ("unless such recorder conforms to the automatic gain control copy control technology").[5] Rovi broadened its focus to include copy protection and DRM for other media,[6] including computer executables, firmware, operating system images, watermarking, and encryption.

---

[4] Aljean Harmetz, *Cotton Club Cassettes Coded to Foil Pirates*, N.Y. TIMES (April 24, 1985).

[5] *See also* David Nimmer, *Back from the Future: A Proleptic Review of the Digital Millennium Copyright Act*, 16 BERKELEY TECH. L.J. 855, 862 (2001) (The DMCA "contains a welter of corporation-specific features, relating to Macrovision Corp. The features in question relate to section 1201's controls on consumer analog devices.") (citations omitted).

[6] *See* Michael Arnold et al., TECHNIQUES AND APPLICATIONS OF DIGITAL WATERMARKING AND CONTENT PROTECTION 203 (2002) (Describing Rovi's Cactus Data Shield product which by 2002 had been used in over 100 million compact discs. "This scheme [Rovi Cactus Data Shield] operates by inserting illegal data values instead of error-correcting codes."); *see also Rovi SafeDisc Copy Protection Overview*, MACROVISION CORPORATION DATASHEET at 2 (1999) ("SafeDisc incorporates a unique authentication technology that prevents the re-mastering of CD-ROM titles and deters attempts to make unauthorized copies. The SafeDisc authentication process ensures that consumers will only be able to play original discs. The user is forced to

14.     MOV Intelligence's patent portfolio, which includes more than 233 issued patents worldwide, is a direct result of Rovi's substantial investment in research and development.  The asserted MOV Intelligence patents are reflective of this history of innovation, embodying a number of firsts in the development of DRM and watermarking technologies.

15.     MOV Intelligence long-term financial success depends in part on its ability to establish, maintain, and protect its proprietary technology through patents.  Defendant's infringement presents significant and ongoing damage to MOV Intelligence's business.  Philips, in an effort to expand its product base and profit from the sale of patented technology, has chosen to incorporate MOV Intelligence's fundamental technology without a license or payment.

## THE ASSERTED PATENTS

### U.S. PATENT NO. 7,200,230

16.     U.S. Patent No. 7,200,230 (the "'230 patent"), entitled "System and Method for Controlling and Enforcing Access Rights to Encrypted Media," was filed January 15, 2001, and claims priority to April 6, 2000.  MOV Intelligence is the owner by assignment of the '230 patent.  A true and correct copy of the '230 patent is attached hereto as Exhibit A.  The '230 patent claims specific methods and systems for extending the capabilities of rights controlled access media systems.  Further, the system and methods provide for designation and authentication of the identity of the data processor upon/through which a data object is to be used.  The system and methods also provide for encryption of a data object and its associated rules such that only a designated data processor can decrypt and use the data object.  The system and methods further provide for designation and authentication of the identity of a user by whom the data object is to be used.  The system and methods also provide for encryption of a data object and its associated rules such that only a designated user can decrypt and use the data object.

---

purchase a legitimate copy."); Kirby Kish, MACROSAFE SYSTEM: A SOLUTION FOR SECURE DIGITAL MEDIA DISTRIBUTION at 7 (January 2002) (showing the architecture of the MacroSafe system and use of a DRM Server and Key Escrow Server).

17.    The '230 patent has been cited by over 180 issued United States patents and published patent applications as relevant prior art.  Specifically, patents issued to the following companies have cited the '230 patent as relevant prior art:

- International Business Machines Corporation
- Qualcomm Incorporated
- Autodesk, Inc.
- NTT Docomo, Inc.
- Hitachi, Ltd.
- Koninklijke Phillips Electronics N.C.
- Hewlett-Packard Development Company L.P.
- Time Warner Cable, Inc.
- Cisco Systems, Inc.
- Blackberry Limited
- Arris Enterprises, Inc.
- Meshnetworks, Inc.
- Google, Inc. (now Alphabet, Inc.)
- Oracle Corporation
- General Instrument Corporation
- Symantec Corporation
- Siemens Aktiengesellschaft
- AT&T, Inc.
- Nokia Corporation
- Verizon Communications, Inc.
- Voltage Security, Inc.
- Scientific-Atlanta, Inc. (subsequently acquired by Cisco Systems, Inc.)
- Telefonaktiebolaget LM Ericsson

18.    The '230 patent claims a technical solution to a problem unique to the transmission of digital information over a network – providing systems and methods for extending the capabilities of rights controlled access to digital content using three layers of encryption.

## U.S. PATENT NO. 6,802,006

19.    U.S. Patent No. 6,802,006 (the "'006 patent"), entitled "System and Method of Verifying the Authenticity of Dynamically Connectable Executable Images," was filed on July 22, 1999, and claims priority to January 15, 1999.  MOV Intelligence is the owner by assignment of the '006 patent.  A true and correct copy of the '006 patent is attached hereto as Exhibit B.

The '006 patent claims specific methods and systems for verifying the authenticity of executable images.  The system includes a validator that determines a reference digital signature for an executable image using the contents of the executable image excluding those portions of the executable that are fixed-up by a program loader.  The validator then, subsequent to the loading of the executable image, determines an authenticity digital signature to verify that the executable image has not been improperly modified.

20.     The '006 patent has been cited by over 85 issued United States patents and published patent applications as relevant prior art.  Specifically, patents issued to the following companies have cited the '006 patent as relevant prior art:

- Intertrust Technologies Corporation
- International Business Machines Corporation
- Intel Corporation
- Microsoft Corporation
- Check Point Software Technologies, Inc.
- Nokia Corporation
- Ipass, Inc.
- Nytell Software LLC
- Amazon Technologies, Inc.
- Panasonic Corporation
- Matsushita Electric Ind. Co. Ltd.
- NXP B.V. (now Cisco Systems, Inc.)
- Intel Corporation
- Hewlett-Packard Development Company, L.P.
- Apple, Inc.
- Lockheed Martin Corporation
- Symantec Corporation
- Zone Labs, Inc.

21.     The '006 patent claims a technical solution to a problem unique to computer systems: verifying and authenticating executable images.

**U.S. PATENT NO. 7,650,418**

22.     U.S. Patent No. 7,650,418 (the "'418 patent"), entitled "System and Method for Controlling the Usage of Digital Objects," was filed on August 26, 2004, and claims priority to December 8, 1998.  MOV Intelligence is the owner by assignment of the '418 patent.  A true and

correct copy of the '418 patent is attached hereto as Exhibit C.  The '418 patent claims specific methods and systems for controlling the usage of digital objects wherein control rights associated with a digital data object activate an external control object and an intercept application to intercept and monitor communications between a hosting application and a document server application associated with the creation of the digital data object.  The '418 patent teaches the use of intercepting and monitoring functions without affecting or changing the hosting application or the document server application.  The external control object activates an intercept application which mimics the functions of the document server application and performs user actions on the digital data object as authorized by the external control object according to the control rights associated with the digital object.  By intercepting and monitoring user actions on a digital data object, the invention can control access and use of the digital data object.

23.     The '418 patent family has been cited by over 47 issued United States patents and published patent applications as relevant prior art.  Specifically, patents issued to the following companies have cited the '418 patent as relevant prior art:

- Google, Inc.
- Fisher-Rosemount Systems, Inc.
- Knoa Software, Inc.
- Securewave S.A.
- International Business Machines Corporation
- Ab Initio Technology LLC
- The Invention Science Fund I, LLC
- Searete LLC
- Microsoft Corporation

24.     The '418 patent claims a technical solution to a problem unique to the transmission of digital information over a network: reliably controlling the usage of digital objects wherein the system and/or methods intercept the communication between two applications communicating over a computer network.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 7,200,230

25.     MOV Intelligence references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

26.     Philips designs, makes, uses, sells, and/or offers for sale in the United States products and/or services for digital rights management.

27.     Philips designs, makes, sells, offers to sell, imports, and/or uses Philips Remote Services (the "Philips '230 Product(s)").

28.     On information and belief, one or more Philips subsidiaries and/or affiliates use the Philips '230 Products in regular business operations.

29.     On information and belief, one or more of the Philips '230 Products include digital rights management technology.

30.     On information and belief, one or more of the Philips '230 Products enable associating a user program key with a user program configured to run on a user data processor.

31.     On information and belief, the Philips '230 Products are available to businesses and individuals throughout the United States.

32.     On information and belief, the Philips '230 Products are provided to businesses and individuals located in the Eastern District of Texas.

33.     On information and belief, the Philips '230 Products enable determining whether the use of the data object is to be restricted to a particular user data processor.

34.     On information and belief, the Philips '230 Products comprise a system wherein a machine key device is associated with the particular user data processor.  Further, the machine key device is accessible by the user program, and the machine key device maintains a portion of a machine key.

35.     On information and belief, the Philips '230 Products enable encrypting a data object so the decryption of a first secure layer and a second secure layer of the encrypted data object requires the user program key and the machine key.

36.     On information and belief, the Philips '230 Products enable determining whether the use of the data object is to be restricted to a particular user.

37.     On information and belief, the Philips '230 Products provide for the designation and authentication of the identity of a user by whom the data object is to be used.

38.     On information and belief, the Philips '230 Products enable associating a user key device with the particular user. Further, the Philips '230 Products enable the user key device to be made accessible by the user program. And, the user key device maintains a portion of a user key.

39.     On information and belief, the Philips '230 Products contain functionality for encrypting a data object so the decryption of a third secure layer of the encrypted data object requires the user key.

40.     On information and belief, the Philips '230 Products contain functionality wherein the third key used by the system for managing digital rights is the media access controller (MAC) address of the user data processor.

41.     On information and belief, the Philips '230 Products provide for encryption of a data object so only a designated data processor can decrypt and use the data object.

42.     On information and belief, the Philips '230 Products enable user specific digital rights management authorization and access.

43.     On information and belief, Philips has directly infringed and continues to directly infringe the '230 patent by, among other things, making, using, offering for sale, and/or selling digital content protection technology, including but not limited to the Philips '230 Products, which include infringing digital rights management technology. Such products and/or services include, by way of example and without limitation, Philips Remote Services.

44.     By making, using, testing, offering for sale, and/or selling digital rights management products and services, including but not limited to the Philips '230 Products, Philips has injured MOV Intelligence and is liable to MOV Intelligence for directly infringing

one or more claims of the '230 patent, including at least claim 39, pursuant to 35 U.S.C.

§ 271(a).

45.     On information and belief, Philips also indirectly infringes the '230 patent by actively inducing infringement under 35 USC § 271(b).

46.     On information and belief, Philips had knowledge of the '230 patent since at least service of this Complaint or shortly thereafter, and on information and belief, Philips knew of the '230 patent and knew of its infringement, including by way of this lawsuit.

47.     On information and belief, Philips intended to induce patent infringement by third-party customers and users of the Philips '230 Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Philips specifically intended and was aware that the normal and customary use of the accused products would infringe the '230 patent.  Philips performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '230 patent and with the knowledge that the induced acts would constitute infringement. For example, Philips provides the Philips '230 Products that have the capability of operating in a manner that infringe one or more of the claims of the '230 patent, including at least claim 39, and Philips further provides documentation and training materials that cause customers and end users of the Philips '230 Products to utilize the products in a manner that directly infringe one or more claims of the '230 patent.  By providing instruction and training to customers and end-users on how to use the Philips '230 Products in a manner that directly infringes one or more claims of the '230 patent, including at least claim 39, Philips specifically intended to induce infringement of the '230 patent.  On information and belief, Philips engaged in such inducement to promote the sales of the Philips '230 Products, e.g., through Philips user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '230 patent.  Accordingly, Philips has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '230 patent, knowing that such use constitutes infringement of the '230 patent.

48.     The '230 patent is well-known within the industry as demonstrated by the over 180 citations to the '230 patent family in published patents and published patent applications assigned to technology companies and academic institutions.  Several of Philips's competitors have paid considerable licensing fees for their use of the technology claimed by the '230 patent. In an effort to gain an advantage over Philips's competitors by utilizing the same licensed technology without paying reasonable royalties, Philips infringed the '230 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

49.     To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '230 patent.

50.     As a result of Philips's infringement of the '230 patent, MOV Intelligence has suffered monetary damages, and seeks recovery in an amount adequate to compensate for Philips's infringement, but in no event less than a reasonable royalty for the use made of the invention by Philips together with interest and costs as fixed by the Court.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 6,802,006

51.     MOV Intelligence references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

52.     Philips designs, makes, uses, sells, and/or offers for sale in the United States products and/or services for determining the authenticity of an executable image.

53.     Philips designs, makes, sells, offers to sell, imports, and/or uses the Philips 8000 series Smart Laser HDTV (Model 65PFL8900/F7); Philips 7000 series Slim Smart Ultra HDTV (Models 65PFL7900/F7, 55PFL7900/F7, 49PFL7900/F7); and Philips 6000 series Smart Ultra HDTV (Models 49PFL7900/F7, 65PFL6601/F7, 55PFL6900/F7).  These infringing devices run firmware including the following firmware updates provided by Philips which infringe the '006

patent: PHL-0COGY_110_0; PHL-0C0GY_127_0; PHL-OCOGY_150_0; PHL-OCOGY_152_0; and PHL-OCOGY_155_0) (collectively, the "Philips '006 Product(s)").

54.     On information and belief, one or more Philips subsidiaries and/or affiliates use the Philips '006 Products in regular business operations.

55.     On information and belief, one or more of the Philips '006 Products include authentication technology.

56.     On information and belief, one or more of the Philips '006 Products enable authenticating the identity of a software application in a dynamic loading environment.  In particular, the Philips '006 Products determine whether an executable image has been dynamically connected to another data object that has been tampered with subsequent to the execution of the software application.

57.     On information and belief, the Philips '006 Products are available to businesses and individuals throughout the United States.

58.     On information and belief, the Philips '006 Products are provided to businesses and individuals located in the Eastern District of Texas.

59.     On information and belief, the Philips '006 Products enable identifying one or more locations within the executable image, each of the identified locations being modified by a program loader.

60.     On information and belief, the Philips '006 Products comprise a system wherein a reference digital signature is generated based on an executable image.

61.     On information and belief, the Philips '006 Products generate a reference digital signature that excludes one or more locations in an executable image.

62.     On information and belief, the Philips '006 Products are capable of storing the reference digital signature on a computer network.

63.     On information and belief, the Philips '006 Products comprise systems and methods wherein an authenticity digital signature is generated based on an executable image.

64.     On information and belief, the Philips '006 Products comprise systems and methods that generate an authenticity digital signature that excludes one or more locations in an executable image.

65.     On information and belief, the Philips '006 Products comprise systems and methods that determine whether the authenticity digital signature matches the reference digital signature.

66.     On information and belief, the Philips '006 Products contain functionality that generates a warning if the reference digital signature does not match the authenticity digital signature.

67.     On information and belief, the Philips '006 Products contain functionality wherein the digital signature is generated based on a first and second point in time.  For example, one or more of the Philips '006 Products generate a reference digital signature at a first point in time.  Subsequently, an authenticity digital signature is generated (at a second point in time).

68.     On information and belief, the Philips '006 Products comprise a system and method that generates a digital signature based on a hash value.  Specifically, the reference digital signature that is generated by the Philips '006 Products at a first point in time is based on a hash value.  Later the authenticity digital signature is also generated based on a hash function that is used to check data integrity.

69.     On information and belief, the Philips '006 Products comprise a system and method that can verify the identity a computer application.

70.     On information and belief, the Philips '006 Products enable the detection of corrupted data in a computer image.

71.     On information and belief, the Philips '006 Products enable the verification of the integrity of software images.

72.     On information and belief, Philips has directly infringed and continues to directly infringe the '006 patent by, among other things, making, using, offering for sale, and/or selling content protection technology, including but not limited to the Philips '006 Products, which

includes technology for verifying the authenticity of a software image.  Such products and/or services include, by way of example and without limitation, the Philips 8000 series Smart Laser HDTV (Model 65PFL8900/F7); Philips 7000 series Slim Smart Ultra HDTV (Models 65PFL7900/F7, 55PFL7900/F7, 49PFL7900/F7); and Philips 6000 series Smart Ultra HDTV (Models 49PFL7900/F7, 65PFL6601/F7, 55PFL6900/F7).

73.     By making, using, testing, offering for sale, and/or selling verification and authentication products and services, including but not limited to the Philips '006 Products, Philips has injured MOV Intelligence and is liable to MOV Intelligence for directly infringing one or more claims of the '006 patent, including at least claims 1, 3, 14, and 15, pursuant to 35 U.S.C. § 271(a).

74.     On information and belief, Philips also indirectly infringes the '006 patent by actively inducing infringement under 35 USC § 271(b).

75.     On information and belief, Philips had knowledge of the '006 patent since at least service of this Complaint or shortly thereafter, and on information and belief, Philips knew of the '006 patent and knew of its infringement, including by way of this lawsuit.

76.     On information and belief, Philips intended to induce patent infringement by third-party customers and users of the Philips '006 Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Philips specifically intended and was aware that the normal and customary use of the accused products would infringe the '006 patent.  Philips performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '006 patent and with the knowledge that the induced acts would constitute infringement. For example, Philips provides the Philips '006 Products that have the capability of operating in a manner that infringe one or more of the claims of the '006 patent, including at least claims 1, 3, 14, and 15, and Philips further provides documentation and training materials that cause customers and end users of the Philips '006 Products to utilize the products in a manner that directly infringe one or more claims of the '006 patent.  By providing instruction and training to

customers and end-users on how to use the Philips '006 Products in a manner that directly infringes one or more claims of the '006 patent, including at least claims 1, 3, 14, and 15, Philips specifically intended to induce infringement of the '006 patent. On information and belief, Philips engaged in such inducement to promote the sales of the Philips '006 Products, *e.g.*, through Philips user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '006 patent. Accordingly, Philips has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '006 patent, knowing that such use constitutes infringement of the '006 patent.

77. The '006 patent is well-known within the industry as demonstrated by the over 85 citations to the '006 patent in issued patents and published patent applications assigned to technology companies and academic institutions. Several of Philips's competitors have paid considerable licensing fees for their use of the technology claimed by the '006 patent. In an effort to gain an advantage over Philips's competitors by utilizing the same licensed technology without paying reasonable royalties, Philips infringed the '006 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

78. To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '006 patent.

79. As a result of Philips's infringement of the '006 patent, MOV Intelligence has suffered monetary damages, and seeks recovery in an amount adequate to compensate for Philips's infringement, but in no event less than a reasonable royalty for the use made of the invention by Philips together with interest and costs as fixed by the Court.

## COUNT III
## INFRINGEMENT OF U.S. PATENT NO. 7,650,418

80.     MOV Intelligence references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

81.     Philips designs, makes, uses, sells, and/or offers for sale in the United States products and/or services for controlling the usage of digital objects.

82.     Philips designs, makes, sells, offers to sell, imports, and/or uses Philips Remote Services (the "Philips '418 Product(s)").

83.     On information and belief, one or more Philips subsidiaries and/or affiliates use the Philips '418 Products in regular business operations.

84.     On information and belief, one or more of the Philips '418 Products comprise systems and methods for intercepting a communication between two applications in a computer environment.

85.     On information and belief, one or more of the Philips '418 Products enable intercepting a communication between two applications where the first and second application communicate via a predefined communications channel.

86.     On information and belief, the Philips '418 Products are available to businesses and individuals throughout the United States.

87.     On information and belief, the Philips '418 Products are provided to businesses and individuals located in the Eastern District of Texas.

88.     On information and belief, the Philips '418 Products include systems and methods that comprise a discreet intercept technology component (DIT) and a dynamic connection logic component (DCL).

89.     On information and belief, the Philips '418 Products comprise systems and methods wherein the DIT component permits the interception of communication and data flows between two or more components in component-based applications.

90.     On information and belief, the Philips '418 Products enable the DIT component to be inserted between two digital components.  The DIT then intercepts the data and communications, thereby controlling the communication between the two digital components.

91.     On information and belief, the Philips '418 Products comprise systems and methods that enable a control object capable of specifying a dynamic control logic depending on the intercepted data communication.

92.      On information and belief, the Philips '418 Products enable applying by the intercept application the dynamic control logic specified by the control object on the digital object.

93.     On information and belief, the Philips '418 Products contain functionality for intercepting data communication between a first application and a second application within a computer network without changing the functionality of the first application and the second application.

94.     On information and belief, Philips has directly infringed and continues to directly infringe the '418 patent by, among other things, making, using, offering for sale, and/or selling digital rights technology, including but not limited to the Philips '418 Products, which include infringing technology for controlling the usage of data objects.  Such products and/or services include, by way of example and without limitation, the Philips Remote Services products.

95.     By making, using, testing, offering for sale, and/or selling digital rights management products and services, including but not limited to the Philips '418 Products, Philips has injured MOV Intelligence and is liable to MOV Intelligence for directly infringing one or more claims of the '418 patent, including at least claims 1, 2, 4, 7, 8, and 9, pursuant to 35 U.S.C. § 271(a).

96.     On information and belief, Philips also indirectly infringes the '418 patent by actively inducing infringement under 35 USC § 271(b).

97.     On information and belief, Philips had knowledge of the '418 patent since at least service of this Complaint or shortly thereafter, and on information and belief, Philips knew of the '418 patent and knew of its infringement, including by way of this lawsuit.

98.     On information and belief, Philips intended to induce patent infringement by third-party customers and users of the Philips '418 Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Philips specifically intended and was aware that the normal and customary use of the accused products would infringe the '418 patent.  Philips performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '418 patent and with the knowledge that the induced acts would constitute infringement.  For example, Philips provides the Philips '418 Products that have the capability of operating in a manner that infringe one or more of the claims of the '418 patent, including at least claims 1, 2, 4, 7, 8, and 9, and Philips further provides documentation and training materials that cause customers and end users of the Philips '418 Products to utilize the products in a manner that directly infringe one or more claims of the '418 patent.  By providing instruction and training to customers and end-users on how to use the Philips '418 Products in a manner that directly infringes one or more claims of the '418 patent, including at least claims 1, 2, 4, 7, 8, and 9, Philips specifically intended to induce infringement of the '418 patent.  On information and belief, Philips engaged in such inducement to promote the sales of the Philips '418 Products, e.g., through Philips user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '418 patent.  Accordingly, Philips has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '418 patent, knowing that such use constitutes infringement of the '418 patent.

99.     The '418 patent is well-known within the industry as demonstrated by the over 47 citations to the '418 patent family in issued patents and published patent applications assigned to technology companies and academic institutions (*e.g.*, Google, Inc. and International Business

Machines Corporation).  Several of Philips's competitors have paid considerable licensing fees for their use of the technology claimed by the '418 patent.  In an effort to gain an advantage over Philips's competitors by utilizing the same licensed technology without paying reasonable royalties, Philips infringed the '418 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

100.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '418 patent.

101.    As a result of Philips's infringement of the '418 patent, MOV Intelligence has suffered monetary damages, and seeks recovery in an amount adequate to compensate for Philips's infringement, but in no event less than a reasonable royalty for the use made of the invention by Philips together with interest and costs as fixed by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MOV Intelligence respectfully requests that this Court enter:

A.      A judgment in favor of Plaintiff MOV Intelligence that Philips has infringed, either literally and/or under the doctrine of equivalents, the '230 patent, the '006 patent, and the '418 patent.

B.      An award of damages resulting from Philips's acts of infringement in accordance with 35 U.S.C. § 284.

C.      A judgment and order finding that Defendant's infringement was willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate within the meaning of 35 U.S.C. § 284 and awarding to Plaintiff enhanced damages.

D.      A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees against Defendant.

E.      Any and all other relief to which MOV Intelligence may show itself to be entitled.

## JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, MOV Intelligence requests a trial by jury of any issues so triable by right.

Dated:  September 29, 2016                    Respectfully submitted,

/s/  Dorian S. Berger
Elizabeth L. DeRieux (TX Bar No. 05770585)
D. Jeffrey Rambin (TX Bar No. 00791478)
CAPSHAW DERIEUX, LLP
114 E. Commerce Ave.
Gladewater, Texas 75647
Telephone: 903-845-5770
E-mail: ederieux@capshawlaw.com
E-mail: jrambin@capshawlaw.com

Dorian S. Berger (CA SB No. 264424)
Daniel P. Hipskind (CA SB No. 266763)
BERGER & HIPSKIND LLP
1880 Century Park East, Ste. 815
Los Angeles, CA 95047
Telephone: 323-886-3430
Facsimile: 323-978-5508
E-mail: dsb@bergerhipskind.com
E-mail: dph@bergerhipskind.com

*Attorneys for Marking Object Virtualization Intelligence, LLC*